Good morning, and may it please the Court. I'm Dan Windahl, representing the Appellants, Birmingham Steel, and CNA Insurance Company. The issue in this case concerns which plan governs a claim for benefits under an ERISA-governed plan. The plaintiff made a claim for long-term disability benefits, and that claim was denied under the terms of one plan. He appealed, submitted additional medical records which were considered, and there was a relatively long nine-month appeal process that resulted in a final decision to deny benefits. He then sued, having exhausted his remedies. The plan, in effect, at the time of the final denial, which then led to the lawsuit, did confer discretion on CNA as the decision-maker, whereas the plan, in effect, at the time of the initial denial, did not. And so the issue here is squarely which plan applies. Does it make a difference? It makes a difference because an abuse of discretion standard of review, of course, is very different from a de novo standard of review. In this case, the district court weighed the evidence and decided by a preponderance of the evidence that the claimant was entitled to benefits. But under an abuse of discretion standard of review, where the record, as in this case, supports the administrator's decision to deny benefits. Suppose we didn't think that. Suppose we thought looking at this record, it would be an abuse of discretion. Do we just go there, or do we send it back to the district court, or what do we do with that? Well, it's certainly been this Court's practice to remand to the district court to make the decision in the first instance whether or not they're, you know, applying the correct standard of review. I noted in my brief, I haven't found a case in this context where this Court says it was wrong to apply a de novo standard, district court. You should have applied abuse of discretion. Do it again. But when the situation is reversed, in almost every instance, this Court has said. But in the reverse, it would matter, because on the reverse, if it's a de novo standard, there's the possibility of new evidence under this Court's case. Yes. But in this instance, there's no possibility of new evidence. So why can't we just look at the record as it sits? Well, this Court does that sometimes. Neither one of the parties has suggested that's what this Court ought to do. Mr. Kammerer did argue that this Court should apply the treating physician rule. And if you apply that rule, you can find that there was an abuse of discretion. Of course, that argument now is not viable, given that the treating physician rule no longer applies to ERISA decisions in the wake of the Black and Decker v. Nord case. And, in fact, does that case mean that whatever the standard of review is, that we could not look at a record such as this, where there's a sort of a legion of examining and treating physicians that include disability, and one or two non-examining, non-treating, record-reviewing-only experts who say that there's not a disability and conclude that there is a disability? No, Your Honor. This Court has the power to do that. And occasionally, it does do that, of course. That's not what we briefed. We certainly didn't. CNA, as the appellant didn't say, even if you apply abuse of discretion, then we win because, and they didn't, and the other side didn't say it. So, you know, I guess you'd be on your own a little bit without the issue. No. I haven't been on this Court as long as it took the last case to be processed. But I'm approaching my tenth anniversary. I can't think of a case where you had, A, such severe injuries, where you have five, six, seven, eight treating, examining physicians, including examining physicians from a neutral institution. I mean, the Mason Medical Center is not something I think that plaintiff lawyers go running to for some reason. And where you've got a serious question of, A, entitlement to 24 months of benefit, or, B, lifetime benefits involving a severe head injury to a guy whose job was to run a high-speed slicer of metal next to molten metal. I guess the question is, why wouldn't somebody making a benefits decision want to have a qualified physician actually examine the claim? Why don't you start with that? You might very well, Your Honor. They didn't here. They often do in these instances. And they made their decision, as I understand it, based upon, at least in part, the advice of an expert who is not a doctor at all? I don't believe that's correct, Your Honor. He's a psychologist, isn't he? Isn't that one of the persons that the decision was based on? I could be wrong. You tell me. There's a doctor who says that he has only dealing with physical matters. He doesn't know anything about neurological problems. Correct. But then there's another person who is not a neurologist. Right? Your Honor, I honestly don't remember what the second doctor's qualifications were. Dr. Hazen? And the second person who's not a neurologist is wrong about how long this person had been working at the job and does not give – Right. And I'm not arguing that in this case, the first person who was not a neurologist was wrong about having the ability to concentrate, distract, stability, irritability, other things that you don't want people in front of a molten metal. I really, Judge Hawkins, I've not been here 10 years. I've been here three years. But this is the most disturbing record I've seen. Well, Your Honor – So the question is, why couldn't we simply say it was an abuse of discretion? Well, Your Honor, as I say, you have that power. And on occasion, this Court has said, we're going to go ahead and examine the record and make that decision. So I'm not going to argue that you lack the power. I'll argue that's – Do you think we shouldn't exercise it? Well, I think you shouldn't exercise it here where, honestly, it's not the case that was briefed. You know, I stand here eager to talk about the standard of review, eager to talk about the cases. And I'd like to, with the Court's permission, I have a Rule 28J letter with supplemental authorities bringing to the Court's attention cases that have been decided since we filed our brief that have held an erisic cause of action, a cruise upon the final decision at the exhaustion of remedies, rather than the initial decision, which is then followed by additional medical records, additional review, and then finally a decision, including a – it's a district court case, but nonetheless, the only other case I could find that involves the precise facts we have here where you have a plan that changed terms between the initial denial and the final denial. And given the fact that these types of employee welfare benefit plans don't vest, and as this Court noted and was influenced certainly by in the Gross-Solomon case, plans can change. So obviously, that's been the emphasis of our briefing. Can I ask the date of the decision? Absolutely, Your Honor. Would you like me to hand these up? In a minute. We'll do that in a minute. But I'd like you to tell me the date of the decisions you wish to cite by 28J. Yes, Your Honor. There's four of them. The first one is the Black and Decker v. Nord case decided May 27, 2003. That, of course, deals with the applicability of treaty position rule in the erisic context. The second case I cite is from a district court in North Carolina. It's dated May 1, 2003. The third case is from the Eastern District of New York. It's dated January 16, 2003. And the fourth case is from the Eastern District of Pennsylvania, dated December 30, 2002. My point in asking the dates is that this business works better when both sides have a chance to look at citations of authority and to respond to them. And it sounds like these decisions were available months ago. They were available on the case? It's a teaching point for the future. The 28J, you can send in a 28J letter any time you want. Decision comes in. You think it bears on the case. We encourage you, send it in to the clerk's office. They'll distribute it to the people that need to know. And that way, we've got this, our own sort of book built up. And when you talk about a case, we've read it and are familiar with the facts. It's just a teaching point. Go ahead with yours. Thank you, Your Honor. Mr. Lindahl, while we are in kind of a little break here, the question seems to have not been decided because it hasn't really come up yet as to whether this would be a 24-month period or an indefinite period of benefits if benefits were to be payable. Now, suppose as a court of appeals we determine that you are correct, that the abuse of discretion standard applies, but that the record is sufficient for us to make that determination. And even under that standard of review, the plaintiff is entitled to benefits. Then the next question would seem to be whether he's disabled from only his job or from any work at all. And there's been no decision on that issue yet. Is that correct? That's correct, Your Honor. The posture of that issue is that was originally the subject of Mr. Kammerer's cross appeal, which he withdrew. The district court awarded 24 months of benefits, which is the amount of time you're entitled to benefits for disability from your own occupation. He's never made a claim. There's never been a decision whether he's disabled from any occupation. So there's literally no decision for this court to review. There's never been a claim, a decision by CNA, a decision by a district court, and no records generate any connection with that issue. So what would we do in your view of the thing? Assuming we were to rule, as I've indicated earlier, and say, you know, benefits are payable here, do we remand to the district court for remand to the plaintiff's administrator for a determination as to whether Mr. Kammerer would be precluded from engaging in any occupation? What would we do? I believe that's what has been done in the past. And I, speaking personally, think that's a reasonable course. I can't cite you a case that that's what you – but as a practical matter, that's where it's going to wind up. Whether this Court remands to the district court to remand to the administrator or whether Mr. Kammerer simply makes a claim for any occupation disability, we're going to get back to the administrator to address that issue. Can I ask a follow-on question? Of course. Have the sides ever considered mediation? I don't recall mediation, but I'm not certain, Your Honor. If you don't know your client's position on this, you can simply respond and say, I don't know. I don't know, Your Honor. You don't know what your client's position is? On mediation? Yes. I don't know, as I stand here today. I handled the appeal, but I didn't handle the trial level, which is never an excuse, but it's an explanation. Oh, that's fine. We have an in-court mediation service, and one possibility would be for us to issue an order essentially suspending a week or two of submission to see whether they wanted to take advantage of that. Your Honor, you have refreshed my memory. We did go through the court mediation program in this case. And it was unsuccessful? It was unsuccessful, Your Honor. Okay. We mediated through the Ninth Circuit. Probably with the trial lawyer, it wasn't you, was it? Actually, it was me. I just ‑‑ unfortunately, I have more cases than I sometimes remember the settlement discussions. Go ahead with your argument, unless you want to reserve some of your time. Your Honor, unless there are any further questions, I'm ‑‑ I don't see, Judge Thompson, any further questions of this counsel? No. Thank you. You've got about six minutes left. Maybe I should ask, would it be better to mail this in, hand it to the clerk now? What would be the best for the TSA letter? I'd suggest mailing it in and making sure that your opponent gets a copy. Yes, he does. He has a copy. Okay. Thank you. Thank you for your argument. You've got about six minutes left if you want to use it. Counsel? Good morning, and may it please the Court, my name is John Meyer. I represent the appellee in this case, Steve Kammerer. This appeal raises questions of equity under ERISA, and with respect to the issue of which plan governs, it challenges this Court to apply federal common law in a manner that comports with the policies underlying ERISA. But I'd like to start with Your Honor's initial line of questioning, which involved whether this Court could affirm on the ground that even under the abusive discretion standard, there was an abusive discretion in this case. And, of course, I agree that the Court can do that. The Court can affirm on any ground. And as Your Honor's pointed out, this record is full of facts that indicate that there was an abusive discretion here. And in particular, the reliance by CNA on its two consultants, one of whom was a psychologist, as Judge Hawkins pointed out, one of whom was an M.D., neither of whom reviewed or met with the plaintiff or examined the plaintiff in this case. It was a purely paper review by these consultants. The second person was not a neurologist. He was a psychologist. There was a psychologist and an M.D. I do not know if the M.D. was a neurologist or not. The therapist said he wasn't doing anything with the neurology issue. Correct. The M.D. limited his opinion to physical issues. He did not address at all the issue of Mr. Kammerer's cognitive deficits. If we were to look at this as an abusive discretion matter, either now or remanded a district court, would we then be able to reach a decision on the present record, or is there a case law that would require us to send it back to the district court? Are you addressing the issue of the 24-month? No. Actually, let's leave that aside for the moment. As to the rest of it, can we simply review it on the current record or for the district court? Or is there some notion that there's something we can perhaps send it back to the administrator or something? As far as I am aware, there is nothing that would preclude you from affirming and granting judgment to Mr. Kammerer on the abusive discretion standard. As Your Honor pointed out, there would be no new evidence taken by the district court if there were to be a remand. That response was addressed, I take it, to the 24 months. Yes. I would like to address that. And Mr. Lindahl is to agree with your opponent that there was initially a cross appeal from the denial of permanent disability. Was there a cross appeal that we made in this case? Yes. There was and is a cross appeal. It is live. It is live, yes. And Mr. Lindahl is correct that we did suggest in our reply brief that one alternative would be to remand to the district court who would then remand to the plan administrator for an initial determination on this issue. There is some new authority that I will bring to the Court's attention in a 28-case submission that supports, that stands for the proposition that a remand to the plan administrator for determination of eligibility under the any occupation standard as opposed to the own occupation standard, same issue as in this case, is unnecessary in this situation and that the proper remedy is to order reinstatement of benefits and leave the ERISA plan free to initiate a review of the continuing eligibility for benefits. The plan remains free to initiate that review at any time. It's not helpful to argue if that case is a no or a no. I understand. The case, I'll provide you with the site now. And I, this came to my attention as I was just preparing for oral argument. For that. We should have sent something in and we would have had it last night at this point.  You'll have it tomorrow. I apologize for the lateness. The case is a case out of the Eastern District of Pennsylvania. It's a 2003 case. And the citation is 2003 Westlaw 21660030. And it stands for the proposition I just discussed. When you finish your argument, there's a sheet you can fill out and write the name of the case in the Westlaw citation and the date and that sort of thing. And she tears it off and gives your opponent a copy of it. If you want to follow it up with a letter and a copy of the opinion, that's fine. Okay. I appreciate that. For what it's worth, I did provide that authority to Mr. Ringwald this morning. Okay. So I understand your client's position. It's that if this panel were to determine that it should affirm the 24-month award and the panel were of a mind to remand on the issue of permanent disability. And you tell me your client's position as to what should happen then. Should it be sent back to the district court for it to conduct a hearing to determine that permanent disability? Should it go back to the plan or should it go back to the plan with instructions to monitor this on an ongoing basis? What's your position? I don't see any reason, Your Honor, why this court could not simply reinstate benefits to the present day, retroactive. There is a difference in the standard. And the difference in the standard could matter in the system. And the fact is that, expressing my view of the record, I was painfully influenced by what his job was. And I don't know. I understand your point that there could be a difference under the differing standards of review. That the court that I just mentioned, this Eastern District Court, did not find that persuasive. The court simply said that, you know, but for the plan's initial termination, wrongful termination of benefits in that case, Mr. — the plaintiff's benefits in that case would have continued. And so the proper remedy, said that court, was to reinstate benefits subject to the plan's decision to — My understanding is that it does not. And we did provide some citations to the excerpts of record to show that the plan contemplates benefits continuing. There's no provision for a reapplication. There's no provision for a re-review of the plaintiff's benefits under the new standard. The assumption, the underlying assumption, is that benefits will continue. And to date, of course, your client has not reported any benefits at all. Correct. That is correct. Okay. Notwithstanding that this Court may choose to affirm on assuming that an abusive discretion standard applies, there are still some arguments I'd like to address with respect to which plan governs. It's a somewhat esoteric issue, but interesting nonetheless. I think there are two basic approaches that could be used by this Court to affirm. And one is to simply look to the Gross-Salomon case. And the Court in that case did consciously choose a triggering date. That was the date of the initial denial in that case rather than the final denial. And that is clear in that case. And although that choice may have been unnecessary to the final outcome of the opinion and, therefore, dicta, that does not necessarily mean that it's not persuasive for this Court. If this Court were to reject plaintiff's position, there would – it would create some tension with the Gross-Salomon case. And it's pointing to that date of initial denial. Do you think that what we're looking for is an approval date for the cause of action? That gets to my next point, Your Honor. My question would be, is my question. Right. After thinking about this, and, you know, the law is evolving in this area, and my thinking, frankly, has been evolving in this area, and I've come to the conclusion that you do not necessarily look to the date of accrual of a cause of action to resolve the question presented here. Correct. There are some problems for us, if we go down that road. I agree. There is another road, however, which I think the Court can take if it so chooses. And there's a separate vein of ERISA case law dealing with amendments or modifications    I think that's a good point. I think that's a good point. And it deals with the retroactive effect of such amendments or modifications. We can start with a proposition that I think everyone can agree with, and that is the general rule relied upon by CNA here, that there are no vested rights in welfare plans. The plan is free to amend or modify at any time for any reason. That's the general rule. That rule has boundaries. We would all agree that you can't modify a plan to yank away benefits once they've been approved and paid. That's simply absurd and unfair. You cannot apply newly modified coverage once a lawsuit's been filed. I think we could agree to that. I think we could also agree that an amendment that denies benefits to plan participants cannot be applied retroactively. For example, in this case, if after Mr. Kammer applied for benefits in November 1999, CNA decided to amend its policy, substitute a new policy that had an exclusion for all injuries arising out of motorcycle accidents, I don't think there's any question that this Court or any court would conclude that that exclusion could not be applied retroactively to deny Mr. Kammer benefits out of his accident that involved his motorcycle. There are a slew of cases that adhere to this principle, and there's a recent Ninth Circuit case, a 2003 case called Winter Route v. American General Annuity Insurance Company, 321 F. 3rd 933. This was not cited in the briefs either, that stands for that principle. And what these cases hold is that an ERISA beneficiary — They did that decision? It was March 5th, 2003. What these cases hold is that an ERISA beneficiary has a present and vested right to a benefit when they are injured and submit a claim for benefits or when they've incurred expenses. That vested right cannot be defeated by a retroactive amendment to the plan, including an amendment that occurs during the appeal process. And there's a case that stands for that proposition. Again, this is a case that was not cited. It's earlier, and I apologize for this. This is a new vein. I'm obviously not repeating arguments in the briefs at this point. That case is Wheeler v. Dynamic Engineering, a Fourth Circuit case from 1995, 62 F. 3rd 634. Now, what are the legal principles that courts use to decide these cases involving retroactivity and amendments to plans? The legal principles are principles of contract law. And specifically, a principle that is relied on is that one party to a contract may not unilaterally change the terms of performance. Isn't Gross-Solomon at least — I understand where you're going. Preclude your point at a more general level. In other words, Gross-Solomon at least looks at the plan in effect at the time of a decision and not at the time that the claim arose. Is that right? Yes, it does. So insofar as you're trying to argue that — there's a question about which decision, but that's a different question. That's the question we have, is it the first decision or the second decision. Correct. But the fact that it is a decision and that it could be changed after the events happen seems to be the law of the circuit and the fact of law in general. Is that right? In other words, that you don't vest once your claim accrues in the standard of review. I think if your question is getting at does Gross-Solomon preclude the argument I'm about to make here, I think the answer is no. And I think the reason is that — I need to know what argument you're about to make, so I'm glad you make the point. Okay. I think the reason is that in Gross-Solomon, the issue, as Your Honor recognizes, was should you look at the triggering event as when the claim is made or when the injury occurs, perhaps, but certainly when the claim is made. Here, the claim was made and there was an initial decision. That is what distinguishes this case from Gross-Solomon and distinguishes it for purposes of this argument because what this argument depends upon are principles of contract law. In December 1999, CNA reviewed Mr. Kammerer's claim. Under the contract that applied at that time, CNA had a contractual obligation to review that claim without exercising discretion. And it did. Okay. Excuse me? It did or it didn't, but then the rule changed. And this isn't a real question whether the second decision is really a review of the first one or whether it's a new decision. And you would have to be right if this was really an appellate system, but it doesn't look like it really is. I think that it's proper to look at the administrative review process as one single process. Okay. And I think it — It doesn't look that way, except that the second decision has new evidence and is a noble decision and essentially starts all over again. I wouldn't agree that it starts all over again. I think they are actually reviewing the first decision. It is the same entity that is reviewing that decision. In the end, it's the planned fiduciary, CNA, who is reviewing all the decisions within the administrative appeals process. For that reason, I would characterize it as a single process of review. And given that it's a single process of review, doesn't it make sense that you would have a consistent standard of review applied by the planned fiduciary? Once you have triggered that review and triggered it under a contract that eliminates discretion, that does not provide CNA with any discretion, shouldn't that standard of review remain consistent? And I think helping guide the outcome of that question is the Supreme Court's admonition in the Firestone case that ERISA was enacted to promote the interests of employees and their beneficiaries. It is remedial legislation. We should construe it liberally in favor of ERISA beneficiaries. It's also, I think, important to recognize that the standard of review is or can be outcome determinative in these cases. And does it make sense to change the rules of review in the middle of the game after review has started? I would submit that if you're choosing between two potential triggering dates, the date of initial review or the date that the appeal is finally rejected, that it makes more sense in terms of contract law, in terms of a fair and consistent application of planned terms, and in terms of the remedial goals of the statute to apply the scope of review that was in effect at the time CNA first exercised How is it a matter of contract law? If you look at it as a matter of contract law, it would appear that Groh-Solomon should be wrong, too. Because once you have a claim to start switching the standard of review in the middle of it. First of all, it's not really a standard of review anyway. The standard of review is derivative from the amount of discretion that the administrator has. So what you're really changing is the amount of discretion the administrator has. I would agree. And if you're looking at it as a matter of contract, Groh-Solomon doesn't seem right either. That's why it doesn't seem to really be a matter of contract. But in Groh-Solomon, the difference is, is that the contract rule, the scope of was never triggered, in the sense that the question was, did the claim accrue or was the triggering date when the claim was submitted prior to any review, or was it triggered? But I'm saying if you're looking at it as a matter of contract, you would think that an agreement that says that if X happens to me and I submit a claim, the discretion of the administrator is going to be X, would be binding after you submit, at least by this point, you submitted a claim. So therefore, it doesn't look like we're really looking at this as a matter of contract, which is an overall odd thing about a risk. I think I finally make it to Your Honor's point. I would argue that it is the administrator's performance of their duty under the contract that triggers that contractual obligation. Until they have actually reviewed and denied the claim, that contractual obligation does not, is not triggered. Mr. Kammerer's right to that scope of review is not vested until that review occurs. And that was not the issue in Groh-Solomon. Perfect timing. You're out of time. Okay. Thank you very much. Thank you very much. Mr. Lindell, you have some time if you'd like to use it. Thank you, Your Honor. There's just two points I really want to make. First, going to this question of whether this Court should concern itself with whether benefits are payable beyond 24 months, there's just a couple of things I want to point  out. One is that I took seriously the plaintiff's statement on page 1 of their last brief, their reply brief, that they were withdrawing any request for an order of payments beyond 24 months. And instead, they asked the Court to remand to the district court and then to the administrator for a determination on that issue. If we were to affirm the district court on the 24 months. Yes, Your Honor. And remand to the district court with instructions to refer the matter to CNA for a determination of permanent disability under the policy, would we have to reach the issue of standard of review? I don't think so, because I think it's very clear that at this point, this would be a whole new proceeding, a new decision on a new assertion for benefits. Plainly, the plan in place at this time, which confers discretion, would render the standard of review. I'm not sure my opponent agrees with that. They may take the position that it relates back somehow. One of the lovely things about your bubble is there's no server button. Yeah. It is a great thing. And as Judge Berzon pointed out, it's a very, very different issue. You're right. All of the medical records, to the extent that the doctors who found disability from the occupation did, they found it based on – All of them did. Well, all of them other than the two that CNA – No, there's only one. The other one is a psychologist who specifically did not deal with the cognitive stuff. And the second person is a psychologist. She is not a neurologist. And she says things like they performed at a level that was considered to be slightly slower than what would be recommended for an individual operating a motor vehicle. So in other words, somebody who shouldn't be operating a motor vehicle is supposed to be dealing with this moment, not now. Okay. The point I want to make, for sure I make here – I'm not saying that. It's my point. All right. The point I want to make sure I make here is this. As this record stands, the last word we have from Mr. Kammerer's doctors is he's going to be back to work in a year. We're retraining him. He is retrainable. He will work. Now, I don't know if he's working today or not. I don't know. I don't – I'm not privy to that information. But, in fact, I probably should be asking you to go ahead and reach the decision beyond 24 months because I'm going to win. There's no evidence in this record that he's disabled from any occupation. But the fact is, the reality is the issue has never been presented. There's never been an analysis by anybody of it. So it's wrong for this Court to get to that issue. Finally, on the question of when the claim accrues and what plan applies, it just makes sense to look at the final decision because, again, Your Honor, you're right. It's not a true appellate review process in the sense that the appellate committee gets a record from the original decision-maker, doesn't consider anything else, and just simply reviews that. It's an evolving process. And there's new information coming in. It makes sense to look at the plan, in effect, at the time of the decision that the district court then reviews, and which is the subject of the litigation. And that's, I think, what every court has said that I've found. Well, no court has described this action. Well, there's a district court that I'll submit to. I mean, as one of the cases that I'll cite to the Court in the 28-J letter says, an invitation to appeal is hardly a final and unequivocal denial of a claim. And that's what we had here. CNA said, well, we're turning it down, but here's what more you can do. And we invite you to submit more medical records. We'll take another look at it. And on a more conceptual level, does it make any sense to be determining the degree of discretion question based on when the claim accrues? Why would we do that? I guess because at that point, presumably, there's no further proceedings. That's the last. That's typically the last. It's the end of the decision-making process. And so finally, you know, I guess you could have a situation where I could come in here today and say, last week the plan was amended, and so now that applies. But I'd have a hard time explaining why an amendment that occurred after the decision at issue should govern. But certainly, the plan that existed at the time the final decision was made, resolving this claim, it seems to make sense that that be the one that determines the standard of review applied in the subsequent judicial review. Thank you, Your Honor. We understand your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed.
judges: Thompson, Hawkins, Berzon